## STATE *v.* THE CONCORD RAILROAD.

59   85
Case 2
72   385
72   387

In an indictment of a railroad corporation for not affording reasonable and equal terms, facilities, and accommodations for the transportation of merchandise, under G. L., *c.* 163, *s.* 2, it is not necessary to expressly allege that the acts charged were unlawfully done, nor that the merchandise was the property of the person having occasion to transport it.

INDICTMENT, upon G. L., *c.* 163, *s.* 2.   Motion by the defendants to quash.

*Mugridge*, for the defendants.

*Greene, Solicitor*, and *A. F. L. Norris*, for the state.

ALLEN, J.   The indictment charges that the defendants, operating a railroad extending from Portsmouth to Concord, on the 5th day of March, 1879, " did wilfully neglect and refuse to afford and furnish G. S. Locke & Co. reasonable and equal terms, facilities, and accommodations for the transportation of three hundred and ten tons of coal upon said railroad, by then and there wilfully delaying, neglecting, and refusing to transport said three hundred and ten tons of coal * * * from Portsmouth to Concord * * * from that day to the tenth day of the same March, and by wilfully refusing, on the fifth day of March, * * * to transport said coal from Portsmouth to Concord * * * unless said G. S. Locke & Co. would first prepay the freight of one dollar and seventy-five cents upon each ton of the coal, * * * which exaction was unusual, extraordinary, unreasonable, and unequal in terms; and by wilfully refusing, on the tenth day of March, to deliver to G. S. Locke & Co. the three hundred and ten tons of coal, transported by the defendants to Concord, unless G. S. Locke & Co. would, before delivery, pay the freight of one dollar and seventy-five cents a ton upon said coal, * * * such exaction being unusual, extraordinary, unreasonable, and unequal in terms, said G. S. Locke & Co. having occasion * * * and having employed said railroad as common carriers to transport said coal from Portsmouth to Concord."   The grounds of the motion to quash the indictment were, that the acts charged were not alleged to have been unlawfully done ; that the acts were not of themselves unlawful ; that no offence was charged ; and that the ownership of the coal was not alleged.

The statute under which the indictment was found provides that " all persons shall have reasonable and equal terms, facilities, and accommodations for the transportation of themselves, their agents and servants, and of any merchandise or other property, upon any railroad owned or operated in this state."   G. L., *c.* 163, *s.* 2.   The word " unlawfully," which is not used in describing the offence in the indictment, is not found in the statute description of the offence.   When the word is not made a part of the statute description of the offence, if used in criminal pleading, the word asserts only a conclusion of law ; and if the conclusion arises out of the facts set forth, its express averment is unnecessary ; if not, its omission leaves the indictment insufficient.   If the language of the indictment describes acts in themselves unlawful, it adds nothing to their unlawfulness to say they were " unlawfully " done.   *United States* v. *Driscoll,* 1 Lowell 305, 306 ; Heard Cr. L. 92.

Ordinarily, in indictments for offences created by statute, it is sufficient to describe the offence in the words of the statute.   *State* v. *Abbott,* 31 N. H. 434 ; *State* v. *Blaisdell,* 33 N. H. 395.   And if objection is made in any such case, it is incumbent on the defendant to show that the case falls within some exception to the general rule.   *State* v. *Abbott, supra.*   In cases where the literal

language of the statute description of the offence embraces cases
not within its equity and spirit, or would not serve to identify the
acts complained of, sufficient facts may be required to include all
the necessary elements of the offence.   State v. Parker, 43 N. H.
83; State v. Peirce, 43 N. H. 273; State v. Goulding, 44 N. H.
284.

It was unlawful for the defendants not to afford the complain-
ants " reasonable and equal terms, facilities, and accommodations
for the transportation of " their coal.   McDuffee v. Railroad, 52
N. H. 430, 449, 450.   The indictment not only uses the statute
description of the offence, but it specifies the acts whereby it is
claimed the law has been violated.   Every delay of five and one
half days might not be unreasonable or unlawful.   The indictment
describes it as a wilful delay, and this, by the common acceptation
of the term, could only be taken to mean a delay intended, one
made for the purpose of delay, and not arising from accident or
justifiable cause.   A wilful delay, or one intended by the railroad,
for a period of five and one half days, to transport merchandise
offered for that purpose, if unexplained, might be unreasonable,
not affording the shippers reasonable facilities and accommoda-
tions, and a violation of the statute on that subject.

The exaction of a prepayment of the freight charges at a certain
rate, as a condition of carrying the coal, was alleged to have been
" unusual, unreasonable, extraordinary, and unequal."   That pre-
payment was required of Locke & Co., and not of others, was not
necessarily unlawful.   If the shippers were insolvent, or had the
habit or disposition to postpone the payment of freight charges
and put the defendants to unusual trouble and expense in their col-
lection, it might be a good reason for requiring prepayment of
them and not of others.   And in many cases the carrier may law-
fully demand payment before he receives the goods, although it is
not his usual practice.   It is the unreasonable and injurious char-
acter of the act that is made unlawful.   The rate demanded might
be different in amount from that exacted in some cases, and not
be unequal nor unlawful.   The statute (G. L., c. 163, s. 2) requir-
ing that " the rates shall be the same for all persons and for like
descriptions of freight between the same points," taken in connec-
tion with the rest of the section, cannot be construed to establish an
arbitrary rule inconsistent with the common-law doctrine of reason-
able compensation.   That " the rates shall be the same for all per-
sons," and that " all persons shall have reasonable and equal terms,"
does not mean universal sameness nor absolute equality.   The de-
fendants might have been justified in exacting of the complainants
the full freight charges, and in refusing to make a deduction which
they sometimes made to others transporting larger quantities of the
same kind of merchandise in a single lot or in a given time.   It is
reasonable equality that is required, and the amount of freight car-
ried in one lot, or in a given time, is an element that may be con-

sidered in determining the reasonableness and equality of the rate. *McDuffie* v. *R. R.*, 52 N. H. 430, 457;—and see *R. R.* v. *Forsaith*, 59 N. H., *post.* It is the unreasonable and injurious discrimination that is made unlawful and penal by statute. Whether the execution complained of related to the demand for prepayment of the freight charges, or to the sum demanded, or to both, if it was unreasonable or injurious in discriminating against the complainants, it was unlawful, and, as an element of the offence charged, its unlawful character was sufficiently averred. The same may be said of the charge of exacting payment of carriage as a condition of delivering the coal after transportation.

In indictments for larceny, and generally for offences relating to injuries to property, ownership of the property must be alleged. 2 Hale P. C. 181; 2 Hawk. P. C., *c.* 25, *s.* 92; 2 East P. C. 514; *Rex* v. *Pear*, 1 Leach 253; 1 Starkie Cr. Pl. 207; 1 Bish. Cr. Pr. 581, 582, 586. This is not a proceeding in which the penalty is made to depend on the value of the merchandise to be transported, nor one for the recovery of damages to the complainants. Whether or not the complainants owned the coal was immaterial. If they had occasion to transport it, it must be presumed that the occasion was a lawful one till the contrary appears.

*Motion to quash denied.*

STANLEY and BINGHAM, JJ., did not sit: the others concurred.